IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION AT CHATTANOOGA

| | |
|---|---|
| **STEVE W. WELCH**<br>9717 Birchwood Pike<br>Harrison, TN 37341<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**SPECIALIZED LOAN SERVICING LLC,**<br>c/o Capital Corporate Services, Inc.<br>992 Davidson Drive, Suite B<br>Nashville, TN 37205-1051<br><br>　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**With Jury Demand** |

Plaintiff Steve W. Welch ("Plaintiff"), through Counsel, and for his complaint against Defendant Specialized Loan Servicing, LLC ("Defendant" or "SLS"), states the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Steve W. Welch ("Plaintiff" or "Welch") is a natural person who is the co-owner of the real property located at 9717 Birchwood Pike, Harrison, TN 37341 (the "Residence").

2. At all times relevant Mr. Welch has maintained and currently maintains the Home as his primary, principal residence.

3. Defendant Specialized Loan Servicing LLC ("Defendant" or "SLS") is a limited liability company incorporated under the laws of the State of Delaware who is registered with the Tennessee Secretary of state. SLS maintains its principal place of business at 8742 Lucent Boulevard, Suite 300, Highlands Ranch, Colorado 80129-2386. Upon belief SLS acts principal

business purpose is to act as a mortgage servicer across the United States including servicing mortgages for properties located in the State of Tennessee.

4. This Court has jurisdiction pursuant to 28 U.S.C. 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection ("DFA"), the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.* ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA"), the Truth in Lending Act, 12 C.F.R. 226, *et seq.* ("TILA"), and 11 U.S.C. 105.

5. This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

6. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau ("CFPB") and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X as 12 C.F.R. 1026.1, *et seq.* a.k.a Regulation Z.

7. Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Welch resides and the Residence is within this District and the events giving rise to the claims asserted herein took place in this District.

**INTRODUCTION**

8. Like many individuals over the past decade, Mr. Welch experienced financial difficulty and made the decision to seek relief by filing for Chapter 13 under Title 11 of the United States Code for the express purpose of curing all existing arrearages on both of his Deeds

of Trust and seeking repayment of his other unsecured debts after completing his Chapter 13 repayment plan.

9. Mr. Welch successfully completed a Chapter 13 Plan. At the conclusion of his bankruptcy, the Chapter 13 Trustee filed a "notice of deemed cured" with the Bankruptcy court pursuant to Bankruptcy Rule 3002.1. No objection was filed to notice and as a result, there is a judicial determination that Mr. Welch's loan(s) with SLS were current as of the date of his Bankruptcy Discharge. As a result Mr. Welch reasonably believed that all of his pre-petition arrearages and his post-petition responsibilities to SLS on the note secured by the Second Deed of Trust on his home was current .

10. Within two (2) years of completing his Bankruptcy and continuing to this day, Mr. Welch has received post-completion mortgage statements from SLS attempting to collect balances due on his Second Deed of Trust that had been paid in the Chapter 13 Bankruptcy.

11. As a direct result of SLS's conduct, Mr. Welch has had to spend time and money to obtain over three and a half (3½) years of bank statements to provide to SLS to prove to them that he was not delinquent. Mr. Welch also lived with the constant anxiety and stress that each payment he has tendered to SLS since he completed his bankruptcy has not been applied; and lived with the constant fear, anxiety, and stress as he has received both the post-completion mortgage statements and the subsequent Notices of Default that SLS would improperly foreclose on his home.

12. In January 2013 the CFPB issued a number of final rules concerned mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically on January 17th, 2013 the CFPB issued the RESPA (Regulation X) and TILA Regulation Z Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) and 78 F.R. 10901 (Regulation Z) which became effective on January 10th, 2014.

14. The Loan on the Residence is a "federally related mortgage loan" as defined by 12 C.F.R. 1024.2(b).

15. SLS is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as such term is defined by 12 C.F.R. 1026.41(e)(4), nor the exemption for a "qualified lender" as such term is defined by 12 C.F.R. 617.700.

16. Mr. Welch is asserting, in part, claims for relief against SLS for breaches of the specific rules under Regulation Z as set forth, *infra.*

17. The Plaintiff has a private right of action under TILA pursuant to 15 U.S.C. 1640(a)(2)(C) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## BACKGROUND FACTS
**(Chapter 13 Bankruptcy)**

18. On February 4, 2011, Mr. Welch filed his voluntary petition for relief under Title 11 of Chapter 13 of the Bankruptcy Code in Case No. 11-10568 filed in the United States Bankruptcy Court for the Eastern District of Tennessee, Southern Division at Chattanooga. A

copy of the docket of the case from the United States Bankruptcy Court Clerk of Courts is attached as *Exhibit A*.

19. At the time the petition was filed, Mr. Welch listed his joint interest in the Residence on Schedule A and listed as secured claim for a Deed of Trust held by SLS in the amount of $15,447.00. *See Exhibit A, Doc. No. 1.; see also Exhibit B* at pp. 5-6

20. On the same day Mr. Welch filed his Chapter 13 Plan with the Court proposed in Paragraph 3(c) of the Plan that SLS would be paid monthly arrearage payments of $35.00 monthly for a scheduled $2,000.00 pre-petition arrearage and on-going maintenance payments pursuant to 11 U.S.C. 1322(b)(5) of $181.00 monthly commencing with the payment due on February 1st, 2011. *See Exhibit C* at p. 2.

21. The payments in the Plan were proposed to be paid by the Chapter 13 Trustee directly to SLS. *Id.*

22. Mr. Welch's Chapter 13 Plan was confirmed on March 28, 2011. *Exhibit A* at p. 3

23. On August 8, 2011 Mr. Welch's Bankruptcy Counsel filed a Proof of Claim for Creditor SLS, Claim No. 3-1. A copy of this claim is attached as Exhibit D to this Complaint. In this Proof of Claim, Mr. Welch, through Counsel, indicated the amount owed as of August 8, 2011 was $23,333.83. *See Exhibit D* at p. 1. Mr. Welch, through Counsel, also indicated the pre-petition mortgage arrearage to SLS was $2,000.00. *Id.*

24. SLS did not object to this Proof of Claim nor did it file an Amended Proof of Claim at any time during the pendency of Mr. Welch's Chapter 13 to contest the validity of Exhibit D. *See Exhibit A*.

25. On September 23, 2015 Kara West, the Chapter 13 Trustee, filed her Notice of Final Cure Payment as to all payments due to SLS. *See Exhibit E*. Pursuant to the Notice the Trustee tendered all payments due to SLS through the payment due for September 2015 and Mr. Welch was to resume regular payments directly to SLS for the payment due for October 1, 2015. *Id.*

26. On October 14, 2015 SLS filed its Response to the Notice of Final Cure agreeing with the Trustee's statements in her Notice. *Id.*

27. On February 26, 2016 the Trustee filed her Final Report and Account, a copy of which is attached as Exhibit G. The Trustee's Final Report reflected that from February 4, 2011 through September 30, 2015 the Trustee disbursed $11,955.00 to SLS. *See Exhibit G* at p. 2. $2,000.00 of these disbursements were for the pre-petition payments (prior to February 4, 2011) due to SLS. *Id.*; *see also* Exhibit D. $9,955.00 of these disbursements were for the post-petition payments due between February 1, 2011 through September 30, 2015. *See Exhibit G* at p. 2; *see also* Exhibits E and F.

**(Payments tendered since October 1, 2015)**

28. Armed with Exhibits E, F, and G, Mr. Welch and his wife began diligently making payments to SLS beginning with the October 1, 2015 payment and continuing through the present payment due (February 1, 2019).

29. In the spring of 2016, Mr. Welch began to notice discrepancies in the periodic billing statements he had been receiving from SLS even though Mr. Welch had made all of his

payments since October 1, 2015 as required by the Notice of Final Cure (Exhibit E) and SLS's response (Exhibit F).

30. Mr. Welch's concerns escalated when he began receiving monthly statements beginning in 2017 and continuing to this day which reflect an accrued late charge of $9.15 monthly. *See Exhibit H* - March 7, 2018 monthly statement.

31. In addition to the late fees Mr. Welch was also concerned that SLS was noting that the loan was past due for October 1, 2016. *Id.* At that time Mr. Welch had tendered all payments due since October 1, 2015 through February 28, 2018. *See Exhibit I.*

32. Since receiving Exhibit H, Mr. Welch has tendered all payments through February 1, 2019. *Id.*; see also *Exhibit J* - February 4, 2019 Mortgage Statement. These payments from October 13, 2015 through the present total $6,880.08. *Id.*

33. Based on Exhibits H, I and J, SLS has misapplied at least $2,172.00 of the tendered payments during this time.

34. SLS's willful actions have caused Mr. Welch to suffer emotional distress driven by fear, anxiety and mistrust that the contractual payments she is tendered to SLS are not being handled properly and have caused SLS to put his account into default status despite the fact that from February 4, 2011 through September 30, 2015 all payments to SLS were made by the Trustee and SLS acknowledged those payments were current and Mr. Welch has tendered timely all payments due since October 1, 2015 to the present. By failing to apply payments properly the Plaintiff has suffered actual damages including but not limited to at least $3,436.85 in unapplied

funds, at least $220.32 in late fees based on Exhibit H, continued damage to Mr. Welch's credit and a delay in the rehabilitation of credit.

35. Mr. Welch and his family powered through his chapter 13 bankruptcy devoting all of his disposable income to rehabilitate his financial life. The peace that he gained from that effort was shattered by the actions of SLS. Mr. Welch has simply wanted to return to being a regular mortgage paying citizen and to have SLS and have SLS properly comply with the terms and conditions of the note, deed of trust and laws, and orders from the Bankruptcy court allowing him to make the timely all payments on his loan after completing his plan, have those payments applied properly as well as the funds tendered during the Chapter 13, begin to reestablish his credit and most importantly, to remain in his home.

36. At the time of the filing of this Complaint, SLS has had more than One Thousand (1,000) consumer complaints lodged against it nationally, specifically concerning the issues identified on the Consumer Financial Protection Bureau's (CFPB) consumer complaint database as "collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (www.consumerfinance.gov/complaintdatabase/).

**COUNT ONE: VIOLATION OF 12 C.F.R. 1026.36(c)(1)**
**[Application of Payments]**

37. Mr. Welch restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 36 in their entirety, as if fully rewritten.

38. 12 C.F.R. §1026.36(c)(1)(i) provides that:

> No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency,

> or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

39. As stated above Mr. Welch received the March 7, 2018 statement from SLS which indicated a delinquency of $3,436.85. *See Exhibit H*.

40. Based on Exhibits E and F, Mr. Welch was to resume payments to SLS as of October 1, 2015. From October 1, 2015 through October 31, 2017, the payments due to SLS were $181.00 monthly. From November 1, 2017 through the present time, the payments due to SLS have been $183.08 monthly.

41. Based on Exhibits E and F, Mr. Welch would have been required to tender $5,259.40 from October 1, 2015 through March 7, 2018.

42. Based on Exhibit I, Mr. Welch tendered at least $4,889.08 during this time leaving a delinquency in payments, if any, of $370.72 and leaving a discrepancy of $3,066.53 that Mr. Welch believes is unaccounted for in Exhibit H.

43. Based on Exhibits E, F, H, and I, SLS has misapplied at least sixteen (16) contractual monthly payments from October 1, 2015 to the present time. Each of these sixteen violations constitute a separate, willful, clear, and material violation of 12 C.F.R. 1026.35(c)(1)(i) and 12 C.F.R. 1024.35(b)(3).

44. SLS's actions are believed to be a pattern and practice of behavior in conscious disregard for Mr. Welch's rights.

45. As a result, SLS is liable to Mr. Welch for actual damages of at least $3,066.53, as described, *supra*, as well as for statutory damages for each of the ten (10) violations described, *supra*, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 15 U.S.C. § 1692(k) - SLS

46. Mr. Welch restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 36 in their entirety, as if fully rewritten.

47. As stated above and based upon Exhibits A, B, C, F, and H, SLS is a "debt collector" because it believes that the Loan was in material default due to the filing of the bankruptcy and SLS has at all times servicing this loan acted a solely as a debt collector.

48. The Plaintiff is a "consumer" as that term is defined within the FDCPA.

49. The mortgage loan on the residence was a debt used for household purposes.

50. Based on Exhibits H and I SLS at all times it was acting as a debt collector misapplied the payments tendered by Mr. Welch from October 1, 2015 to the present. As detailed in Paragraphs 39 through 42 Mr. Welch believes at least $3,066.53 in payments have been misapplied.

51. Based on Exhibits H and I SLS has assessed late fees to each tendered payment, including all payments within the last twelve (12) months, of $9.13 monthly. *See Exhibit H*. Based on Exhibits E, F, and I, this late fee assessment violates 15 U.S.C. 1692(f) as an unconscionable means to collect a debt.

52. Based on the allegations contained herein, *supra*, SLS has sent eleven more periodic billing statements containing the same improper late fee.

53. In addition to the improper late fee notes on Exhibit H, SLS also stated an improper delinquent amount owed on the loan as of March 2018. *See Exhibit H*. The actual delinquency, if any, that existed on the loan is detailed in Paragraphs 39 through 42. The statements regarding the amount owed violate 15 U.S.C. § 1692(d) as employing an unfair and unconscionable means to collect the subject debt.

54. In addition to the allegations described in this Count, *supra*, SLS has sent a Notice of Default to Mr. Welch since April 2018. This Notice of Default puts Mr. Welch at a constant risk of an improper foreclosure as based on Exhibit H, SLS would be attempting to collect improper amounts due.

55. In addition, SLS's conduct has caused Mr. Welch to suffer great emotional distress driven by the fear that he might lose his home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

56. SLS's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the Plaintiff's rights.

57. SLS is liable to the Plaintiff for actual damages of at least $3,066.53, statutory damages, and Plaintiff's attorney's fees and costs.

### COUNT THREE: CONTEMPT FOR VIOLATION OF ORDER OF BANKRUPTCY COURT

58. The Plaintiff restates and realleges all allegations contained in Paragraphs 1 through 36 as if fully rewritten herein.

59. This Court has concurrent jurisdiction of matters of the Bankruptcy Court.

60. 11 U.S.C. 105(a) permits this Court to issue any Order, Process or judgment that is appropriate to carry out provisions of this Title.

61. As referenced above the Trustee filed her Notice of Final Cure on September 23, 2015. *See Exhibit E*.

62. SLS filed its response to the Trustee's Notice of Final Cure on October 14, 2015 agreeing with the Trustee that the Loan was current through September 30, 2017 and Mr. Welch was to resume direct payments as of October 1, 2015. *See Exhibit F*.

63. Based on the Trustee's payment history SLS received $11,955.00 during the Chapter 13 which accounted for all contractual mortgage payments due between February 1, 2011 through September 30, 2015 and all pre-petition mortgage arrearages due prior to February 1, 2011. *See Exhibit G*; see also *Exhibit D*.

64. Based on Exhibit H as of March 7, 2018 SLS was asserting Mr. Welch's loan was delinquent in the amount of $3,436.85. *See Exhibit H*.

65. Based on Exhibits H and I the payment discrepancy between SLS and Mr. Welch was $370.72.

66. Based on its own response in Exhibit F, the delinquent amount in Exhibit H is a patently false statement.

67. Based on its own response in Exhibit F the only way that the delinquent amount from Exhibit H is correct is if SLS is seeking to collect amounts paid in the Chapter 13. *Compare Exhibits D, E, F and I with Exhibit G*.

68. When SLS prepared Exhibit H it knew or should have known all amounts that were tendered during the Chapter 13 and more importantly how those amounts were applied to the balances due under the Deed of Trust.

69. The acts of SLS described above, *supra*, demonstrate a willful pattern of overt acts that violate Bankr. R. 3002.1 and/or 11 U.S.C. 524(i) if the Trustee-disbursed funds were misapplied.

70. As a result of the above violations this Court must find SLS in contempt of Bankr. R. 3002.1 and enter an award against SLS pursuant to 11 U.S.C. 105 of actual damages of at least $3,066.55, punitive damages, and Mr. Welch's legal fees and expenses in a total amount to be determined by this Court.

## COUNT FOUR: BREACH OF CONTRACT

71. Mr. Welch restates and realleges all allegations contained in Paragraphs 1 through 53 as if fully restated herein.

72. The Plaintiff and SLS have a binding contractual relationship as Defendant SLS is the servicer of Plaintiff's Deed of Trust and Note for the owner of the loan who is also believed to be SLS. *See Exhibit I.*

73. Paragraph 1 of the Deed of Trust directs Mr. Welch to timely pay the principal and interest due on the Deed of Trust to the mortgagor. *See Exhibit D* at p. 8. In this case Mr. Welch is to tender payments to SLS.

74. Pursuant to Paragraph 3 of the Deed of Trust, ? and its servicer, SLS, are directed to apply all tendered payments first to any escrow items --- of which there are none between the

parties --- and then to payments due on the interest due on the Deed of Trust and then to payments due on the principal due on the Deed of Trust. *See Exhibit D* at p. 8.

75. As alleged in Paragraphs 39 through 42 and demonstrated by Exhibits H and I, SLS has misapplied payments totaling at least $3,066.55 since October 1, 2015 despite Mr. Welch tendering timely payments every month since that time.

76. Based on Paragraphs 39 through 42 and demonstrated by Exhibits H and I Mr. Welch believes at least $3,066.55 in payments have been misapplied.

77. Based on all of the allegations described *supra*, SLS has breached the mortgage contract with respect to acceptance of payments and application of payments. This breach is one of bad faith based on Exhibits E and F as well as the continued imposition of late fees that began as early as November 2017.

78. As a result of the actions of SLS the Plaintiff has been forced incur attorneys' fees and costs and has suffered the stress, anxiety, fear, and frustration of having to deal with these issues.

79. SLS has breached the Note and Deed of Trust and is liable to Mr. Welch for actual damages of at least $3,066.53 as well as Mr. Welch's attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Steve Welch respectfully requests for the following relief against Defendant Specialized Loan Servicing LLC:

A) For an award of actual damages of at least $3,066.53, as applicable, as alleged in Counts One through Four;

B) For an award of statutory damages of at least $400.00 but not to exceed $4,000.00 as to the allegations contained in Count One;

C) For an award of statutory damages of $1,000.00 as to the allegations contained in Count Two;

D) For an award of punitive damages in an amount to be determined at trial, as applicable, for violations contained in Count Three;

E) For an award of Plaintiff's reasonable attorneys' fees and costs, as applicable, as alleged in Counts One through Four; and

F) For all other relief this Court may deem just and proper.

Respectfully Submitted,

*/s/*Brian D. Flick, Esq.
Brian D Flick (0081605)
DANNLAW
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Lead Counsel/Co-Counsel for Plaintiff Steve Welch*

Kenneth C. Rannick, Esq. B.P.R. #011106
LuAnn Whaley, Esq. #023085
4416 Brainerd Road
Chattanooga, TN 37421
(423) 624-4002
(423) 624-0509 fax
rannick@lawyerchattanooga.com
l.whaley@lawyerchattanooga.com
*Co-Counsel for Plaintiff Steve Welch*

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

          */s/*Brian D. Flick, Esq.
          Brian D Flick (0081605)
          DannLaw
          *Lead Counsel/Co-Counsel for Plaintiff Steve Welch*

          Kenneth C. Rannick, Esq. B.P.R. #011106
          LuAnn Whaley, Esq. #023085
          *Co-Counsel for Plaintiff Steve Welch*